UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| KAREN C.[1], | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL NO. 1:21cv410 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2024.

2.  The claimant has not engaged in substantial gainful activity since February 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except: she can occasionally climb stairs or ramps, balance, stoop, kneel, crouch, or crawl, but can never climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to moving machinery and unprotected heights.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on February 11, 1970 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on March 9, 2022. On April 19, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on May 3, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff has been treated for several conditions, including low back, neck, foot, right arm, and hip pain, headaches, anxiety, depression, decreased concentration, poor sleep, and fatigue.

4

She saw primary care providers at Parkview Hospital (Tr. 475-526) and Lutheran Health Physicians (Tr. 871-77, 1115-53). Plaintiff also saw several specialists, including orthopedic surgeons David Conner, M.D., and Ahmer Ghori, M.D. (One Ortho Northeast) (Tr. 463-67, 974-79); pain management specialists Jeffrey Barr, M.D. (Tr. 448-62), Karmen Wilson, N.P.C., and Thomas Straub, P.A.C. (Summit Pain Management) (Tr. 1080-1114); rheumatologists Fahd Saeed, M.D., and Monica Reddy, M.D. (Tr. 894-905); and neurosurgeon Isa Canavati, M.D. (Neuro & Spine Center) (Tr. 599-603). Plaintiff also sought care at the ER for foot and back pain. (Tr. 384-92, 791-96.)

Exams showed in the right hip and pelvis, positive Faber test (Tr. 454); in the low back, tenderness and positive straight-leg raising tests (Tr. 454, 460, 465, 599, 872, 899, 1087, 1091, 1097); in the cervical spine, positive Spurling's test (Tr. 899, 1086, 1091, 1096, 1100-01); in the shoulders, positive Neer's and Hawkins' tests (Tr. 1087, 1092, 1097, 1101);  in the sacroiliac joint, pain (Tr. 454, 460); in the hands and wrists, diffuse tenderness (Tr. 1087, 1092, 1097, 1101); in the right foot, tenderness and reduced range of motion (Tr. 977); abnormal reflexes and weakness in the triceps and hamstrings (Tr. 1086, 1091, 1097, 1100); decreased sensation in the right calf and toes and cervical and lumbar spine (Tr. 465, 1096, 1100); decreased range of motion in the cervical spine, shoulders, elbows, wrists, hands, hips, legs, knees, feet, and ankles (Tr. 454, 899-900, 1087, 1091, 1097); antalgic gait (Tr. 454, 460); and psychiatric abnormalities, including anxious mood and crying (Tr. 796). Plaintiff's BMI ranged between 27.98 in March 2018 (Tr. 525) and 32.16 in December 2020 (Tr. 1120).

Objective testing revealed in the lumbar spine, (a) mild degenerative changes in the lumbar spine with increased narrowing of the L5 to S1 disc space with possible trace retrolisthesis

5

at the L3 to L4 level (Tr. 465) and (b) mild multilevel spondylosis, greatest at the L3 to L4 level (Tr. 1113-14); and in the cervical spine, mild arthritic changes throughout (Tr. 1111-12).

Diagnoses included lumbar spondylosis, radiculopathy, and degenerative disc disease of the lumbar spine with mild facet arthropathy (Tr. 465, 599, 901, 1101); chronic bilateral low back pain with bilateral sciatica (Tr. 478); chronic cervical pain, radiculopathy, arthropathy, and degenerative joint disease (Tr. 450, 901, 1101); myofascial pain (Tr. 450); paresthesia (Tr. 1119); shoulder bursitis (Tr. 1092); osteoarthritis (Tr. 901, 1101); sacroiliitis (Tr. 460, 1101); positive rheumatoid factor (Tr. 896); lupus (*id*.); fibromyalgia (*id*.); chronic pain syndrome (Tr. 450, 1101); neuropathic pain (Tr. 1101); "test anxiety" (Tr. 525); and depression (Tr. 873, 901).

Plaintiff was prescribed narcotics, steroids, non-steroidal anti-inflammatories (NSAIDs), muscle relaxers, nerve pain medications, antidepressants, and anxiolytics. (*See, e.g.*, Tr. 450, 461, 466, 526, 1097.) In January 2019, she underwent a bilateral sacroiliac joint steroid injection. (Tr. 456.) In July and October 2020, she had subacromial bursa injections in both shoulders (Tr. 1093) and then again in the right shoulder (Tr. 1102). From July to September 2020, Plaintiff underwent physical therapy for back and neck pain. Plaintiff continued to have pain and difficulty with daily activities at discharge from therapy. (Tr. 980-1043.)

On March 2, 2020, at the request of the State Agency, Plaintiff underwent a psychological consultative exam performed by Revathi Bingi, Ed.D. (Tr. 755-58.) Plaintiff reported frustration, depression, insomnia, emotional sensitivity, fatigue, poor focus, mood swings, and racing thoughts; she could not do chores (*e.g.*, vacuuming, dishes, and laundry) due to pain. (*Id*.) On exam, Plaintiff could recall only 2 of 3 words and could not complete "Serial 7s." (*Id*.) Dr. Bingi noted that Plaintiff came across as "depressed and often tearful" during the exam. (*Id*.) Dr. Bingi

6

diagnosed major depressive disorder and anxiety disorder. (*Id*.) Dr. Bingi concluded that Plaintiff had adequate abstract reasoning and verbal skills, fund of general information, long-term memory, and judgment; she appeared capable of managing funds if awarded benefits. (*Id*.)

In April 2020, a State Agency medical consultant concluded that Plaintiff could perform light work despite a severe spine disorder. (Tr. 63-92.) A second medical consultant affirmed that determination. (Tr. 95-128.) Two psychological consultants determined that Plaintiff's mental impairments were not severe. (Tr. 63-92, 95-128.)

At the hearing before the ALJ, Plaintiff testified that physical therapy alleviated her back pain only temporarily. She continues to have back pain despite narcotics, muscle relaxers, injections, and physical therapy. (Tr. 46-48.) She can walk to her backyard and around her house. She must take breaks and sit when preparing meals. (Tr. 48.) Plaintiff uses a cane, walker, or wheelchair when she has a pain flare up. (Tr. 49.) She has difficulty using her walker due to pain in her neck, for which she is scheduled to receive injections. (Tr. 48.) She has mostly "bad days" and frequently uses her walker. (Tr. 50.) Plaintiff sometimes drops items due to pain in her neck; she cannot lift a gallon of milk. (Tr. 51-52.) Her medications cause "spaciness." (Tr. 52.)

The Vocational Expert (VE) testified in response to a hypothetical question consistent with the ultimate RFC. (Tr. 55-56.) The VE testified that the individual could work as a storage facility clerk, a furniture rental clerk, and a ticket taker. (*Id*.) Work would be precluded if the individual were absent more than 1 day a month or 12 days a year, or would need more breaks than those normally scheduled. (Tr. 56-57.)

In support of remand, Plaintiff argues that there are two defects that infect the entire decision. Plaintiff claims that the decision is based on cherry-picked evidence, with the ALJ

highlighting normal findings or evidence of normal functioning, and overlooking objective abnormalities or difficulties in functioning. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ . . . ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). Plaintiff also contends that the ALJ failed to provide an accurate and logical bridge. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The Court must be able to trace the ALJ's reasoning from the evidence to the conclusion in an accurate and logical bridge. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015).

In the present case, the ALJ found Plaintiff less limited than alleged for three primary reasons: (1) Plaintiff's daily activities suggest she is "not as limited as alleged"; (2) Plaintiff reported some improvement in back pain with injections and prescription narcotics; and (3) exams showed she was stable and only conservative treatment was recommended for her back condition. (Tr. 21-22.)

Plaintiff argues that the ALJ's conclusion that Plaintiff's daily activities suggest she is not as limited as alleged is unsupported given the qualifications the ALJ failed to address. For example, Plaintiff reported that she receives assistance caring for her children, cannot engage in hobbies (*e.g.*, crocheting) any longer, must sit to cook and take breaks, has difficulty bathing, shaving, and caring for her hair, and does not do laundry, home repairs, outside work, dishes, or bathroom cleaning. (Tr. 311-20, 335.) Plaintiff's fiancé stated that Plaintiff takes breaks when cooking, does only minor household cleaning, needs encouragement to do tasks, and cannot engage in hobbies any longer. (Tr. 325-32.) An ALJ may not broadly state that Plaintiff's activities suggest a lesser degree of impairment than alleged without addressing these significant

8

qualifications with which she performs them. *Thompson v. Berryhill*, 722 F. App'x 573, 582 (7th Cir. 2018) (ALJ erred in finding that claimant engaged in a "broad range of activities" without addressing evidence that the claimant's activities were not performed to the extent implied by the ALJ); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(F)(1). This Court agrees that Plaintiff's activities, which were performed with assistance and limitations, are not a sufficient basis to reject her symptoms. *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020).

Plaintiff next contends that the ALJ erred in relying on Plaintiff's reports of some improvement in back pain with injections and medications. Although Plaintiff reported a 75 percent improvement in back pain a few weeks after undergoing SI joint injections (Tr. 452-54), the record shows that such improvement was short-lived. In November 2019, Plaintiff went to the ER for severe back pain radiating to both legs and tingling in her feet. (Tr. 791-96.) Thereafter, throughout 2019 and 2020, Plaintiff reported back pain, and exams showed tenderness in the lumbar and cervical spine, positive straight-leg raising tests, and abnormal gait. (*See, e.g.*, Tr. 599-600, 871-74, 1033-41, 1081-1102, 1117, 1120, 1144, 1150.) Likewise, although Plaintiff reported significant improvement in her ability to walk in December 2020—with narcotic medication (Tr. 1081-83)—such improvement is not necessarily consistent with a lack of disabling symptoms, nor indicative of an ability to perform the standing and walking requirements of light work. Accordingly, the ALJ erred in relying on short-lived "improvement."

Additionally, although some medical records indicated that Plaintiff's conditions were "stable" *(see, e.g.*, Tr. 452-54, 1130-31), "stability" does not necessarily indicate a lack of disability. *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of . . . work[.]");

9

*Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."). That Plaintiff's pain was not well-controlled, even if her conditions were noted to be "stable," is evident in Plaintiff's pain management specialist's note in December 2020—the last treatment note in the record—that the plan was for Plaintiff to undergo nerve blocks and radiofrequency ablation in the cervical and lumbar spine. (Tr. 1080-81.) The ALJ never mentioned this planned treatment, which is, objectively, not conservative, and corroborates Plaintiff's complaints of pain.

Plaintiff also points out that there was no mention anywhere in the ALJ's decision of Plaintiff's fibromyalgia, chronic pain syndrome, and lupus—all of which could explain her complaints of pain notwithstanding apparently less severe objective findings. Plaintiff notes that all of these conditions are chronic, with no known cure, and are associated with widespread pain and other symptoms (*e.g.*, fatigue). Social Security Ruling (SSR) 03-2p, 2003 WL 22399117, at *5 (Oct. 20, 2003). This supports Plaintiff's complaints of back and other pain and explains why there may not be more objective evidence explaining Plaintiff's pain. *See Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (statements about symptoms may not be disregarded absent objective medical evidence).

Plaintiff also argues that the State Agency opinions were outdated and incomplete. *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018); *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (remanding because State Agency opinions were outdated in light of abnormalities in new records that revealed "significant and new developments" that bore directly on claimant's functioning).

The State Agency psychological consultants' opinions were incomplete because the only

evidence they considered was Dr. Bingi's March 2020, consultative exam findings and conclusions, Plaintiff's daily activities, and May and June 2020 exams for physical conditions. (Tr. 71-73, 105-06.) There was no consideration of other exams showing anxious mood and crying (Tr. 796), the impact of Plaintiff's chronic pain from fibromyalgia, chronic pain syndrome, and lupus, the impact of Plaintiff's medications, including narcotics, anxiolytics, and antidepressants, on her mental functioning, or Plaintiff's reports that she has difficulty completing tasks, failed her nursing boards three times due to anxiety, and suffers from chronic fatigue (Tr. 311-20, 335, 523-26, 898-901). Further, the ALJ's reliance on Dr. Bingi's exam findings without consideration of the above evidence is misplaced given that Dr. Bingi's was a one-time, time-limited exam that could not account for a longitudinal evaluation of Plaintiff's symptoms and difficulties functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(6) ("In one-time, time-limited, or other unfamiliar situations, you may function differently than you do in familiar situations. In unfamiliar situations, you may appear more, or less, limited than you do on a daily basis and over time."). Moreover, the psychological consultants failed to consider the qualifications with which Plaintiff performs daily activities, primarily due to pain, which also impacts her cognitive functioning. (*See, e.g.*, Tr. 311-20). Therefore, the psychological consultants' opinions are unsupported.

      Moreover, the State Agency medical consultants' opinions were outdated due to a November 2020 cervical spine MRI showing mild arthritic changes throughout (Tr. 1111-12), Summit Pain Management records showing positive Spurling's test, decreased sensation and reduced range of motion in the cervical spine, positive straight-leg raising tests, pain and decreased sensation in the lumbar spine, positive Hawkins' test and pain in the shoulders, and

11

tenderness in the hands and wrists (1086, 1091, 1096, 1100-01), evidence that physical therapy did not resolve Plaintiff's back pain (Tr. 980-1043), and Plaintiff's pain management specialist's recommendation that she undergo nerve blocks and radiofrequency ablation in her cervical and lumbar spine (Tr. 1080-81).

The State Agency medical consultants were the only medical sources to issue an opinion regarding Plaintiff's functional limitations due to her physical impairments. Yet, they did not review a critical piece of evidence—the November 2020 cervical spine MRI. The ALJ never mentioned this evidence, which is exactly the kind of evidence that needed to be submitted for expert consideration. *Kemplen v. Saul*, 844 F. App'x 883, 887-88 (7th Cir. 2021) ("ALJ must seek an additional medical opinion if there is potential decisive evidence [(e.g., x-rays and MRIs)] that postdates the state agency consultant's opinion."). This imaging, in combination with exams showing new abnormalities and recommendations for Plaintiff to undergo several invasive procedures for her multi-level back pain, constitutes "potentially decisive findings" that render the State Agency medical consultants' opinions unsupported. *See, e.g., Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJ erred in accepting "uncritical[ly]" the State Agency consultants' opinion where they did not review an MRI showing a worsening of the claimant's conditions).

As the State Agency opinions were incomplete, outdated, and unsupported, the ALJ was not entitled to rely on them. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Because there were no other supported medical opinions upon which the ALJ could rely, the ALJ faced an evidentiary deficit in determining whether Plaintiff's conditions met or equaled a Listing at Step Three and in crafting the RFC.

In response, the Commissioner asserts that the ALJ "thoroughly evaluated" all of the

objective medical evidence for the relevant period and "specifically addressed" evidence post-dating the State Agency consultants' review. The Commissioner also contends that even if the State Agency opinions were outdated, Plaintiff did not explain how the new evidence warranted further restrictions than those imposed by the ALJ. Both arguments miss the crux of the issue—that the ALJ was not qualified to assess on her own the impact of medical evidence the State Agency consultants did not consider—thus, it is immaterial that the ALJ purportedly reviewed the entire medical record herself. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) (same). Here, the only medical opinions were those of the State Agency consultants. However, those opinions were incomplete, outdated, and, thus, unsupported.

The Commissioner's argument that any error in relying on the State Agency medical consultants' outdated opinions was harmless because Plaintiff failed to show the functional impact of the new evidence, also fails. Plaintiff has demonstrated that the new imaging, exam findings, physical therapy results, and physician recommendations undermine the ALJ's light work and postural maneuver assessments and bolster Plaintiff's subjective statements, including reports that her pain is aggravated by walking, standing, sitting, bending, lifting and normal daily activities, she can walk just 200 feet before needing to rest, cannot lift more than a gallon of milk, must take breaks when preparing meals, and uses a cane, walker, or wheelchair for ambulation. If Plaintiff's reports are credible, then Plaintiff cannot perform the requirements of light work or the level of postural maneuvers the ALJ assessed. For these reasons, the ALJ erred in relying on the unsupported State Agency opinions. Remand is warranted for proper analysis of the record.

Plaintiff also argues that the ALJ's RFC assessment is erroneous. The ALJ concluded that Plaintiff "has the [RFC] to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b), except: she can occasionally climb stairs or ramps, balance, stoop, kneel, crouch, or crawl, but can never climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to moving machinery and unprotected heights." (Tr. 21). Plaintiff argues that this does not constitute a proper RFC, as the Agency requires a function-by-function analysis. *See* SSR 96-8p, 1996 WL 374184, at *1, ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in [20 C.F.R. §§ 404.1567(b)-(d) and 416.967(b)-(d)]. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light . . . ."). Here, the ALJ did not first identify Plaintiff's functional restrictions and assess her work-related abilities on a function-by-function basis. Thus, the ALJ did not provide a function-by-function assessment as required by the Agency.

Moreover, light work requires the ability to walk or stand approximately 6 hours in an 8-hour workday and lift and carry up to 20 pounds. 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Plaintiff contends that the evidence shows that she is not capable of these requirements. For example, exams showed hip, shoulder, hand, wrist, right foot, sacroiliac joint, lumbar, and cervical spine pain; reduced range of motion in the lumbar and cervical spine, shoulders, elbows, wrists, hands, hips, legs, knees, feet, and ankles; abnormal reflexes and weakness in the hamstrings; decreased sensation in the right calf and toes and cervical and lumbar spine; positive straight-leg raising tests; and, antalgic gait. Imaging revealed disc space narrowing, facet arthropathy, stenosis, and disc bulging in the lumbar spine and

14

arthritic changes in the cervical spine—the latter of which no medical source reviewed. Plaintiff suffers from fibromyalgia, lupus, and chronic pain syndrome—all of which are chronic pain disorders. She underwent injections in the SI joints and shoulders (Tr. 456, 1093, 1102), participated in physical therapy for back and neck pain (Tr. 980-1043), and was prescribed narcotics, steroids, NSAIDs, muscle relaxers, and nerve pain medications (*see, e.g.*, Tr. 450, 461, 466, 526, 1097), none of which resolved her pain (Tr. 46-48).

Plaintiff reported widespread pain aggravated by walking, standing, sitting, bending, lifting, and normal daily activities, needing assistance caring for her children, inability to engage in hobbies or do most household chores, and needing to sit and take breaks when cooking; she can walk only 200 feet before needing to rest for 1 to 2 minutes, uses her walker for long distances, can lift 2 to 3 pounds, and has difficulty squatting, bending, reaching, kneeling, and climbing stairs. (Tr. 311-20, 894-97, 1033-41, 1095-98.) Plaintiff's fiancé reported similar symptoms and limitations. (Tr. 325-32.) Plaintiff testified that she must take breaks and sit to prepare meals, uses a cane, walker, or wheelchair when her pain flares up—which is frequently, mostly has "bad days," sometimes drops items due to pain, and cannot lift even a gallon of milk. (Tr. 44-50.) Finally, Plaintiff is obese, with a BMI of 32.16 in December 2020. (Tr. 1120.)

Plaintiff argues that this evidence shows that she cannot meet the requirements of light work. *See, e.g., Goins*, 764 F.3d at 680-82 ("How [the claimant] could be thought capable of either standing or walking for six out of eight hours eludes us. Given her obesity and the serious spinal problems revealed by the 2010 MRI, we can't understand how the administrative law judge could have concluded that the plaintiff has a capacity for such hard physical labor."); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) ("A great many people who are not grossly obese

15

and do not have arthritic knees find it distinctly uncomfortable to stand for two hours at a time. To suppose that [claimant] could do so day after day on a factory floor borders on the fantastic, but . . . has no evidentiary basis that we can find."); SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). Plaintiff contends that the evidence shows that she is capable of, at most, sedentary work, which would have required the ALJ to find her disabled per the Medical-Vocational Guidelines. *See* Rule 201.14 (age 50-54, high school education, skilled past work).

Plaintiff further contends that the evidence discussed above also shows that no accurate and logical bridge supports the ALJ's restriction to occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling. "Occasionally" means "occurring from very little up to one-third of the time" (*i.e.*, up to more than 2 hours a day). SSR 83-10, 1983 WL 31251, at *5-6. This means that for up to more than 2.6 hours a day, Plaintiff would be climbing, balancing, stooping, kneeling, crouching, and crawling. Plaintiff points out that such a conclusion is strongly undermined by the evidence of Plaintiff's lumbar and cervical spine conditions, obesity, osteoarthritis, neuropathic pain, fibromyalgia, lupus, and chronic pain syndrome.

In response, the Commissioner relies on *Knox v. Astrue*, 327 F. App'x 652, 657-58 (7th Cir. 2009), which is factually inapposite. In *Knox*, the Seventh Circuit held that a specific function-by-function assessment was not required where (1) it was clear from the decision that the ALJ analyzed all the relevant evidence, including objective findings, the claimant's testimony, and other evidence and (2) the claimant did not point to any evidence that conflicted with the ALJ's RFC. *Id*. Here, the ALJ did not analyze the evidence—she merely summarized some of it—and Plaintiff has pointed to objective and other evidence undermining the ALJ's RFC. Thus, the Commissioner's reliance on *Knox* is misplaced.

16

Additionally, contrary to the Commissioner's argument, the ALJ did not consider key pieces of evidence undermining the ALJ's RFC assessment—specifically, the impact of the combination of Plaintiff's fibromyalgia, lupus, chronic pain syndrome, spinal abnormalities, and obesity on her ability to meet the sitting, standing, walking, and postural requirements of light work and engage in occasional postural maneuvers (*i.e.*, up to more than 2.6 hours a day). Plaintiff demonstrated that the ALJ failed to analyze or ignored evidence undermining her conclusions and critical deficiencies undermine the Commissioner's arguments to the contrary. Thus, for all these reasons, remand is warranted for proper consideration of the impact of Plaintiff's conditions on her physical functional restrictions.

Next, Plaintiff contends that the RFC is devoid of any restrictions to account for Plaintiff's mental impairments and psychiatric symptoms. The ALJ rejected Plaintiff's mental impairments at Step Two because Plaintiff was never hospitalized and did not receive emergency mental health treatment, she did not engage in therapy, her symptoms were managed "conservatively" with medication prescribed by her primary care provider, and exams showed that Plaintiff was stable, oriented, and had normal behavior, judgment, and thought content. (Tr. 18.)

Plaintiff correctly argues that the ALJ's reliance on an absence of psychiatric hospitalizations or emergency mental health treatment is improper. This Court has previously recognized that "a lack of hospitalization does not necessarily mean that the individual's symptoms are not disabling." *Adams v. Berryhill*, No. 1:17cv47, 2017 WL 4349718, at *12 (N.D. Ind. Oct. 2, 2017). Thus, the fact that Plaintiff's primary care specialist, rather than a mental

17

health specialist, was treating her anxiety and depression, does not show that the conditions are not as severe as claimed.

Additionally, the ALJ cannot rely on a lack of therapy for mental health symptoms without first considering the reasons Plaintiff may not have pursued such treatment. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A]n ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."). Here, the record shows Plaintiff had some issues with insurance and financial constraints, which may have contributed to a failure to seek additional care. (*See* Tr. 876-77 (could not afford a CPAP machine for sleep apnea and was worried about being able to refill her medications).) Moreover, Plaintiff is eligible for SSI, which requires showing disability and financial need, indicating that Plaintiff has a low income. 42 U.S.C. § 1381a. Yet, the ALJ did not consider whether these factors negatively impacted Plaintiff's ability to seek mental health treatment. *See Shauger*, 675 F.3d at 696 ("good reasons" for not seeking medical care may include "an inability to afford treatment").

Also, as noted above, "stability" of symptoms does not mean they are non-disabling. Despite acknowledging Plaintiff's many complaints of pain, exams showing abnormalities associated with pain, and imaging showing pain-producing deformities at several levels of Plaintiff's spine (Tr. 21-23), the ALJ apparently did not consider whether Plaintiff's pain impacts her mental functioning, such that RFC restrictions are necessary. This error is even more significant in light of Plaintiff's fibromyalgia, lupus, and chronic pain syndrome—all of which are chronic pain disorders without a known cure. Likewise, there was no consideration of the possible mental impact of Plaintiff's obesity on her RFC.

Agency regulations specifically note that ALJs should consider the mental impact of

obesity and chronic pain disorders like fibromyalgia. *See* SSR 12-2p, 2012 WL 3104863, at *6 (July 25, 2012) ("People with [fibromyalgia] may also have . . . mental limitations because of their pain or other symptoms."); SSR 03-2p, 2003 WL 22399117, at *5 (Oct. 20, 2003); SSR 19-2p, 2019 WL 2374244, at *3-4. Yet, the ALJ never addressed whether RFC restrictions are necessary to accommodate the impact of Plaintiff's chronic pain and obesity on her mental functioning.

As noted, Plaintiff testified that she has mostly "bad days" where she is in pain. (Tr. 50.) Her ability to engage in daily activities is limited or nonexistent due to pain. (Tr. 44-50, Tr. 311-20, 325-32.) She has difficulty completing tasks and becomes irritable due to pain. (Tr. 311-20.) She reported frustration, depression, insomnia, emotional sensitivity, fatigue, poor focus, mood swings, racing thoughts, and "spaciness" due to her medications. (Tr. 52, 755-58.) This evidence indicates that Plaintiff may not be able to concentrate, persist, and maintain pace on a sustained basis as required by competitive employment. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E)(3) (the "B Criteria" area of concentrating, persisting, or maintaining pace refers to the ability to focus attention on work activities and stay on task at a sustained rate).

Accordingly, restrictions are necessary to address Plaintiff's difficulties with concentration, persistence, and maintaining pace, even if Plaintiff's limitation in this area of functioning is only mild. (Tr. 19); *see, e.g.*, *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) (remanding because of the ALJ's failure to adequately address the claimant's moderate limitations in concentration, persistence, and pace); *Radosevich v. Berryhill*, 759 F. App'x 492, 494-95 (7th Cir. 2019) (same).

The Seventh Circuit has also emphasized that ALJs must confront evidence that a

19

claimant cannot meet the benchmarks for off-task behavior and absenteeism and that failure to do so warrants remand. *Lothridge v. Saul*, 984 F.3d 1227, 1234-35 (7th Cir. 2021). Here, there is evidence that Plaintiff struggles with persistence, remaining on task, and being present at work due to her pain, fatigue, and mental impairments. The VE testified that work would be precluded if the individual were absent more than 1 day a month or 12 days a year, or would need more breaks than those normally scheduled. (Tr. 56-57.) Yet, the ALJ entirely failed to determine whether Plaintiff would need to be off task or absent, or incorporate the VE's testimony into the RFC, "leaving the RFC altogether uninformed by considerations of off-task time or unplanned leave." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

As there is no accurate and logical bridge to support the ALJ's RFC assessment, remand is required. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) (remanding where ALJ failed to build the requisite bridge between evidence that claimant had moderate difficulties in maintaining attention and concentration and the ALJ's conclusion that claimant would not be off task more than 10 percent of the workday).

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: May 9, 2022.

s/ William C. Lee
William C. Lee, Judge
United States District Court
